E. F. BENHAM, Adm., et al., Appellants, v. ERLE B. TURKLE, Appellee.

**WILLS:** Construction—Rules—Precedents—Intention of Testator.
1 In view of the infinitely different ways in which wills are phrased, it is of no avail, in the construction thereof, to cite rules of construction or to draw on the storehouse of precedent, unless such rules or precedents really help to unlock the intentions of the testator.

**WILLS:** Construction—Life Estates—Power of Alienation—Intention—Technical Terms. Whether a will grants a life estate *with or without power of alienation* is a simple matter of intention, to be gathered (a) from the will and (b) from its background, unhampered by nice technical shades of meaning which ancient precedent may have given to certain words.

PRINCIPLE APPLIED: The background of a will was: The testator and his wife, a woman of simple habits, were 77 years old when the will was executed. A deceased daughter had left a ''ne'er-do-well'' husband and two children, which children the testator had affectionately cared for. The will provided:
1. The payment of debts.

2. An absolute devise in *fee simple* to the wife of a home, *to do with as she sees fit.*

3. "To my wife I give, devise and bequeath during her life the use, income and control of all *other* property . . . of which I may die seized . . .".

4. "At the death of my wife, the following real estate . . . shall go in fee simple to (the grandson) as soon as he becomes 23 years of age, but he is to have the income of said land after my wife's death."

5. A like provision as No. 4 for the granddaughter.

6. "All other property of my estate that shall *remain* at the death of my wife . . . I devise and bequeath to (said grandchildren) but they are only to have the income from the time of my wife's death until they become 23 years old."

7. "The payment of taxes shall be carefully attended to by whoever has charge of the estate, whether it be by my wife during her lifetime or the guardian or trustee of said children until they come into possession."

*Held,* the wife, aside from the devise of the home, took a life estate in the "use, income and control" of the property, with no power of alienation over the principal of the estate.

**WILLS: Construction—Words of Large Import Followed by Words of Lesser—Key to Intention.** In the construction of a will, the use in one clause of words of large and comprehensive meaning may well furnish a key to the real intention of the testator in a subsequent clause wherein are used words of less import.

PRINCIPLE APPLIED: See under No. 2, Items 2, 3.

**WILLS: "Use and Income" for Life—Devisee's Power Over—Remainderman.** A devise for life of the "use, income and control" of property invests the devisee with power to do as he pleases with such "use and income". A remainderman cannot complain if the devisee gives it away.

**WILLS: Construction—Life Estate—Power of Alienation—Effect of Term "What Remains".** The right of the devisee of a life estate in property to actually sell and dispose of the principal of the estate will not be inferred from a provision disposing of "all other property of my estate that shall *remain* at the death of" the life devisee, when other provisions of the will and the circumstances surrounding its execution clearly evince an intention to withhold the power of alienation.

PRINCIPLE APPLIED: See under No. 2, Item 6.

**WILLS: Life Estate—Wrongful Disposal of Estate—Accountability of Life Tenant and Grantee.** A life devisee and, in case of his

death, his estate, must account, along with the grantee, for any portion of the estate conveyed in violation of the terms of the will.

WILLS: ''Use and Income'' for Life—Devisee's Power Over—Re-
4, 7 mainderman.

*Appeal from Muscatine District Court.*—A. P. BARKER, Judge.

SATURDAY, SEPTEMBER 25, 1915.

REHEARING DENIED FRIDAY, JANUARY 21, 1916.

ACTION to construe a will and for an accounting.—*Reversed and Remanded.*

*Milton Remley, H. C. Madden,* for appellants.

*Wm. Hoersch* and *J. F. Devitt,* for appellees.

GAYNOR, J.—Nathaniel Tobin died in 1895, testate, leaving surviving him his widow, Eliza C. Tobin, and two grandchildren, Eva O'Mealey and Erle B. Turkle, children of his deceased daughter, Belle C. Turkle. Nathaniel left a will, in which he appointed his wife, Eliza C. Tobin, administratrix. The will was duly admitted to probate, and Eliza qualified as executrix. The will, so far as is material to this controversy, provides:

''Item 1. I direct that my just debts and funeral expenses be first paid out of my estate.

''Item 2. To my wife, Eliza C. Tobin, I devise and bequeath Lot 6 in Block 7, in the town of Atalissa, in Muscatine County, Iowa, absolutely and in fee simple as her own property, to do with as she sees fit.

''Item 3. To my said wife, Eliza C. Tobin, I give, devise and bequeath, during her lifetime, the use, income and control of all other property, whether real, personal or mixed, of which I may die possessed, which shall be in lieu of all her statutory rights in and to my estate.

''Item 4. It is my will that, at the death of my wife,

Eliza C. Tobin, the following real estate situated in Muscatine County shall go in fee simple to my grandson, Erle B. Turkle (here follows a description of certain real estate), as soon as he shall become twenty-three years of age, but he is to have the use and income of said land from time to time after my said wife's death.

"Item 5.   It is my will that, at the death of my said wife, Eliza, the following real estate situated in Muscatine County shall go in fee simple to my granddaughter, Eva B. Turkle (here follows a description of certain real estate), as soon as she shall become twenty-three years of age, but she is to have the income and use of said land from the time of my wife's death.

"Item 6.   All other property of my estate that shall remain at the death of my said wife, Eliza C. Tobin, whether it be real, personal or mixed, I devise and bequeath to the above named Erle B. Turkle and Eva B. Turkle, share and share alike, but they are to have only the income thereof from the time of my wife's death until they are respectively twenty-three years of age.''

Item 7 provides that all taxes on his estate shall be promptly paid, and provides that this shall be carefully attended to by whoever has charge of the estate, whether it be his wife, during her lifetime, or the guardian or trustees of the above named children until they shall come into possion themselves.

Item 8 appoints the wife executrix.

Item 9 appoints Herbert Booth guardian of his two grandchildren until they become of age, and trustee of their estate until they come into possession thereof at the age of twenty-three.

A determination of this controversy involves a construction of this will; and, before proceeding to a consideration of the claims urged by the parties, we find it necessary to ascertain from this will what the intent of Nathaniel was in the disposition of his property, as made in the will.   This

primarily involves a determination of what rights in or to the property the wife, Eliza, took at the time of his death.

Eliza died on the 26th day of June, 1899, leaving surviving her the plaintiff, Eva O'Mealey (née Turkle), and the defendant, Erle B. Turkle, the parties named in the will as the grandchildren of Nathaniel. The contention of the plaintiff is that Eliza took, under the will, only a life estate in the property therein mentioned, except that mentioned in the second item, with a right only to the use, income and control during her life; and that, upon her death, it passed, as provided in the will, to the grandchildren.

The contention of the defendant is that, as to the property named in the 4th and 5th clauses, to wit, the real estate, she obtained a life estate, with a right to the use, income and control of the same during her life; that, upon her death, it passed to the parties therein named, in fee simple; that, as to all other property, she took an absolute right to the property, with power of alienation; that the grandchildren, by the terms of the will, were given only so much of that other property as remained at the time of her death. Or that, if she took a life estate only in the other property, there was coupled with the life estate a power of disposition; that she took a life estate in all property mentioned in the 3d clause of the will, with power of disposition added; and that the other parties named in the will, to wit, the grandchildren, took only such property as was left undisposed of at the time of her death. These are the controversies between the parties touching the proper construction of the will.

I. In construing a will, it is the duty of the court to ascertain and determine the intention of the testator, as disclosed by the instrument. All rules of construction and interpretation are intended to aid the court in ascertaining the intent. It is the duty of the court to give effect to the whole instrument, so far as the wording will permit. The first duty of the court is to consult the document itself and, if it is clear

1. WILLS: construction: rules: precedents: intention of testator.

and unambiguous in its terms, the controversy must be deter-
mined therefrom.　As is said in some cases, it is the duty of
the court to take the instrument by its four corners, consider
all that the instrument contains, and from the whole instru-
ment determine the intention of the testator as to each matter
covered by its terms.　No part of the instrument should be
read by itself, especially where it is apparent from the in-
strument that the testator has undertaken to make a disposi-
tion of all his property, to take effect upon his death.　The
rules that have been adopted for the construction of wills
are useful, and only useful, when they aid in the ascertain-
ment of the intent of the. testator.　The testator owns the
property and has the right to make such disposition of it as
he pleases, not inconsistent with the law and public policy;
and to this end, he may make all legal restrictions and limita-
tions upon the passing of the title from himself to those he
names as beneficiaries.　In the old days, when
men skilled and learned in the law were con-
sulted and employed in the preparation of
wills, and when they were prepared by skilled
hands, there was much more reason for giving
to the words used their technical meaning than in these later
days, when these instruments are often prepared by the
testator himself, or by those chosen by him, unskilled and
unlearned in the use of technical terms.　As has been fre-
quently said, words are intended to convey ideas; to convey
the thought in one mind to the mind of another.　The wish,
the desire, the purpose, of the testator must be gathered from
the instrument and attending facts and circumstances, giving
to the words their usual and ordinary signification, unless,
by the instrument itself, they appear to have been used in a
more limited or technical sense.

In construing this will, we must put ourselves, as nearly
as possible, in the position of the testator at the time the will
was drawn.　At that time, he was seventy-seven years of age.
His wife was approximately his own age,—maybe a few years

2. WILLS: con-
struction: life
estates: power
of alienation:
intention:
technical terms.

younger,—a woman of simple tastes and habits. His grand-children were the offspring of his only daughter, who died soon after the birth of Eva. The father of these children seems to have been a ne'er-do-well. Upon the death of the mother, these children were cared for by the grandparents and an aunt. The will was drawn at a time when life was drawing to its close. A desire to make provision for his wife during her remaining years, and for these grandchildren, for whom, it seems, he had a great fondness, was the dominating thought.

After making provision for the payment of his debts, his first thought seems to have been of his wife. To her, in the second clause of the will, he made an absolute devise of a home, Lot 6 in Block 7 in the town of Atalissa. This he gave to her absolutely and in fee simple, as her own property, to do with as she saw fit. In the third clause, immediately fol-lowing, his wife seemed still to be in his thought. The words used in this third item, however, are significant, when brought in contrast with the provisions in the second item. It will be noted that, in making provi-sions for her in the second item, he used words strong and vigorous in their meaning,—"ab-solutely and in fee simple as her own prop-erty, to do with as she sees fit"; while in the third item, when he came to make further provision for her, he used words less comprehensive, and said, "I give, devise and bequeath *the use, income and control* of all other property during her lifetime." This third clause of the will evidently was intended by Nathaniel to cover all property not disposed of in the second clause. Of all property not disposed of in the second item, he gave to his wife the use, income and control only, during her life. It will be noted that in this third clause he did not give her *the property,* but only the use, income and control of the property. This purpose is made more manifest in the fourth, fifth and sixth clauses; for in these clauses he seems to recognize the fact that he has given to his wife the use,

3. WILLS: con-struction: words of large import followed by words of lesser: key to intention.

income and control of the property there; for he does not therein state that he gives anything to her, but assumes that she is provided for. All after the third clause deals with the children only, and provides that, upon her death, they shall take it.

To summarize, we find that, in the second clause, he gives to his wife certain property therein named, specifically and absolutely, in fee simple, as her own, to do with as she sees fit. In the third clause, he gives her the use, income and control of all *other property* of which he may die seized. In the fourth clause, he gives his grandson a fee simple title to property therein specifically described, upon the death of his wife. In the fifth clause, he gives to his granddaughter, Eva, a fee simple title to property, specifically described, at the death of his wife. In the sixth clause, he devises to these grandchildren *all other property* of his estate *that remains at the death of his wife.*

It is on the construction of this sixth clause that the real controversy hinges. It is by the wording of this clause that the defendant contends that, though the wife received but a life estate in this other property, yet there was added to it a right of disposition during her life, and that, if this right of disposition was exercised by the wife during her life, the grandchildren can take only so much as remains of the original estate, as was undisposed of at the time of her death.

As to the real estate named in the fourth and fifth clauses, the wife, by virtue of the provision made for her in the third clause, acquired a right to the *use, income and control* of the property, up to the time of her death. These children acquired no right to the use, income or control of the property until her death. The right to dispose of the use and income of the property named in the fourth and fifth clauses is absolute in the wife. The income became her property, and she could give it away or sell it or dispose of it during her lifetime as she saw fit. The claim, therefore, that, during

4. WILLS: "use and income" for life: devisee's power over: remainderman.

her lifetime, she gave to the defendant Erle the use of this land without compensation from him is not a matter of which the plaintiff can complain.

The property disposed of in the second, fourth and fifth clauses of the will consisted of real estate. The disposition of this other property must be determined by the third and sixth clauses of the will. Reading these two clauses together, in so far as they relate to the personal property they read: "I devise and bequeath to my wife, during her lifetime, the use, income and control of all personal property of which I die possessed; and what shall remain at the death of my wife, I devise and bequeath to my grandchildren, share and share alike."

5. WILLS: construction: life estate: power of alienation: effect of term "what remains."

The difficulty arises in determining what the testator meant when he said, "All other property of my estate *that shall remain* at the death of my wife, I give", etc.

It is contended by the defendant that this means, and should be interpreted to mean, that he gave his wife a right of disposition during her life, and that only such as remained undisposed of by her should pass to the parties named. This interpretation, however, is hardly consistent with the language used when he undertook to express his intent in the third clause of the will, "I give to her the *use, income and control* of the property during her lifetime",—not the property itself. Nowhere did he give to the wife the title to any property except that named in the second clause of the will. As to all other property, whether personal, real or mixed, she was limited to the enjoyment of the use and income during her natural life. The only bequest to the wife is found in the second and third clauses of the will. In the second clause, he gives her a specific property. In the third, he gives her only a right to the use, income and control of the other property. The other clauses relate to the disposition of the property after her death.

As has been said before by this court, previously deter-

mined cases are not of controlling importance in determining the construction to be given to a will: each will depends so much upon the language used that it is almost impossible to find two cases worded so exactly alike as to find one case a precedent for another. The most that can be done is to lay down general rules which should be followed when applicable to the individual case.

Our attention has been called to *Webb v. Webb,* 130 Iowa 457, which is claimed to be controlling in this case. There is a marked distinction in the wording of the will in this case and in the *Webb* case. In the *Webb* case, there was devised to the wife all personal property of every kind and description, *to have and to hold* during her natural life, and at her death, the same, or whatever remained, to be divided between the children. In the *Webb* case, there was a specific devise of property *to have and to hold* during her natural life, and added to this a thought suggested that it was the desire and wish of the testator that she should have power to dispose of it during her lifetime; for it said, ''and at her death, the same (being the property devised) or whatever remains'', clearly intimating that the property devised might not remain, but might be disposed of during her life. There was nothing in that will to suggest a different purpose or intent; while in the will under consideration, there is much to negative such a purpose or intent on the part of the testator—the very wording of the devise itself—the fact that, in the preceding clause, in which he devised to her certain property, he used words of larger import and meaning.

As bearing upon the question here, see *Haviland v. Haviland,* 130 Iowa 611. The wording of the will in these two cases is markedly different. In the *Webb* case, it was held that there was a life estate with power of disposition added. In the *Haviland* case, it was held that there was a life estate without power of disposition added. The difference in the wording of the two wills accounts for the different holdings in the two cases. In the *Webb* case, the will said:

"I devise all my personal property of every kind and description to my wife, to *have* and to *hold* during her life, and at her death, what remains shall be divided", etc.; while in the *Haviland* case, the will said: "I give, devise and bequeath to my wife all my property *for her exclusive use and benefit during her life,* and what remains to be equally divided between the children." In the *Webb* case, it was held that the wording of the will gave the widow but a life estate with the power of disposition added; while in the *Haviland* case, it was held that she took only a life estate; that power to sell could not be implied from the language, and sale could be made, if at all, only for her support, comfort and maintenance; that the general power of alienation could not be inferred from such language.

We think the *Haviland* case is authority for our holding in this case: that the wife, Eliza, took only a life estate, without the power of alienation added. This thought is further confirmed by what is said in the seventh clause of the will, in which he says: "Taxes shall be promptly paid before delinquent. No part of my estate shall be sold for taxes; that the payment of taxes shall be carefully attended to by whoever has *charge* of the estate, *whether it be my wife during her lifetime,* or the guardian or the trustee of the above named children until they shall come into possession."

But it is argued that the words used in the sixth clause of the will, to wit, "all other property of my estate *that shall remain* at the death of my wife", indicate a purpose and intent, on the part of the testator, to give to his wife the right of disposition during her life. If we were to admit that the use of the words "whatever remains" necessarily implies power of disposition during her life, there would be much in the argument that the testator intended to give her power of disposition during her life. Wear, tear and time injure or destroy or diminish the value of personal property during a lifetime. Property may be lost or destroyed. By the operation of these natural causes, the property may be diminished,

and that which is left is that which remains. As said by counsel in argument, "If there were no other way by which property may be diminished, lost or subtracted from, other than by selling or giving it away, then it would be logical to say that the use of the word 'remains' in such a case would imply the power to sell or give away, or the power of disposition." There is, however, too much in this will and in the attending circumstances to negative the idea that it was the intention of the testator to give to his wife the power of disposition as to the property described in the third and sixth clauses of the will. We must, therefore, hold that no such power was given her in the will.

II. We come next to the consideration of the claims made against her administrator, R. F. Benham, and defendant Turkle. As to Erle B. Turkle, it is claimed that Eliza, during her lifetime, gave to him a large portion of the property which she received under the will; that she gave it to him without any consideration therefor; that, at the time he received it, he knew of all the conditions of the will under which she received and held the property; that he took it with full knowledge of the fact that she had no right, under the will, to dispose of the property held by her, in the manner in which she disposed of it. As to her administrator, it is claimed that her estate should account for and turn over to these heirs the property received by her under the will of Nathaniel Tobin. Her final report, as administratrix of the estate of Nathaniel Tobin, shows that she received and held, at that time, as such administratrix, the sum of $7,753.15.

6. WILLS: life estate: wrongful disposal of estate: accountability of life tenant and grantee.

Upon this question, we are not able, under the record as it now stands, to make a finding of fact upon these issues sufficiently definite and certain to enable us to feel that, in so attempting, we reach a conclusion that is just and equitable between the parties. We are satisfied that an accounting ought to be had, and that the estate of Eliza Tobin should

7. WILLS: "use and income" for life: devisee's power over: remainderman.

be required to account for all moneys received through her from the estate of Nathaniel and disposed of by her during her lifetime, except the income, if any, from such property, and except such as was used by her for her support and maintenance during her life; and that the defendant Turkle should be required to account for and pay back all moneys belonging to the estate of Nathaniel received by him from Eliza during her administration of the trust. To this end, we deem it proper to remand the case to the trial court, for an accounting between these parties. However, under the holding here, Turkle should not be required to account for the value of the *use of the real estate* during the life of Eliza, but only for such of the personal property as he received from her as gift or otherwise.

The court below held that, by the terms of the will, Eliza was given a life estate in all the property, with an absolute power of disposition during her lifetime; that any disposition made of it during her lifetime was binding upon these grandchildren; thus construing the will as giving to the wife a life estate, with absolute power of disposition added.

The case is reversed and remanded for an accounting, as herein provided.—*Reversed* and *Remanded.*

DEEMER, LADD and SALINGER, JJ., concur.