IN RE ESTATE OF JOHN G. JOHNSTON.

**WILLS:** Construction — Legacies Payable from "Cash on Hand." A will which provides that certain legacies shall be payable solely from testator's *"cash on hand"* will be construed to mean that said legacies shall be payable from testator's "quick assets" (i. e., short-time certificates of deposit), when the will as a whole clearly points to such intent.

*Appeal from Tama District Court.*—JAMES W. WILLETT, Judge.

JANUARY 11, 1921.

The appellant filed objections in the probate court to the report of the executor of the will of decedent. The objections were overruled, and the objector has appealed.—*Affirmed.*

*Snyder & Snyder,* for appellant.

*Struble & Stiger* and *J. R. Caldwell,* for appellee.

Evans, C. J.—I. The objections presented involve the construction of certain provisions in the will of John C. Johnston, who died on June 10, 1917. The will was executed on April 26, 1915. It disposed of an estate of approximately $70,000. This property consisted in the main of four classes:

(1) The homestead and its contents.

(2) Fifty-eight shares of bank stock.

(3) Promissory notes, largely secured by mortgages.

(4) Money in bank, in the form of short-time certificates of deposit, bearing interest at 4 per cent.

The first of the foregoing classes had a value of approximately $3,000 or $4,000, and was devised to the widow. The second class amounted to $5,800, the third class to approximately $50,000, and the fourth class to about $11,000. The property included in the first and second classes above was all specifically devised to particular persons. The will contained a large number of bequests. Many of these bequests were made payable out of a particular kind of property. Out of the 38 items of the will, we quote the following, as sufficiently illustrative of all, for the purpose of this case:

"11. I give and bequeath to my son John F. Johnston, five hundred ($500.00) dollars, to be paid to him by said executor from the cash which I may have on hand at the time of my death;

"12. I give and bequeath to my son, John F. Johnston, seven thousand five hundred ($7,500.00) dollars, to be paid to him by said executor from the proceeds of the sale of my notes and accounts of which I may be possessed at the time of my death; * * *

"17. I give and bequeath to my granddaughter Mae Hart, two thousand ($2,000.00) dollars, to be paid to her by said exec-

utor from the cash which I may have on hand at the time of my death;

"18. I give and bequeath to my granddaughter, Mae Hart, one thousand ($1,000.00) dollars, to be paid to her from the sale of my notes and accounts, of which I may be possessed at the time of my death;

"19. I give and bequeath to my granddaughter Addie Kuelper, two thousand ($2,000.00) dollars, to be paid to her by said executor from the cash I may have on hand at the time of my death;

"20. I give and bequeath to my daughter-in-law, Quipy Johnston, the wife of my son, John F. Johnston, the sum of five hundred ($500.00) dollars to be paid to her by said executor from the cash I may have on hand at the time of my death;

"21. I give and bequeath to my daughter-in-law Quipy Johnston, the wife of my son, John F. Johnston, the sum of one thousand ($1,000.00) dollars, to be paid to her from the proceeds of the sale of my notes and accounts of which I am possessed at the time of my death; * * *

"34. All of the rest and residue of my estate of every kind and nature that I die seized of, I give and bequeath to my son, John F. Johnston, to be his absolutely;

"35. I authorize and direct my said executor named herein, E. S. Yeisley, within one year from the date of his appointment, to pay to the said legatees and beneficiaries herein the amounts of the legacies and bequests named herein which I have stipulated in this will to be paid to them from the cash on hand at the date of my death.

"36. In case the cash on hand belonging to my estate at the time of my death is not sufficient in amount to pay the bequests by me made in this will and stipulated to be paid from the cash on hand at date of my death, then and in that event I direct that any sum not realized by my said executor in sufficient amount to pay the legacies and beneficiaries named in this will in full stipulated to be paid from cash on hand at the date of my death that the amount of my said estate shall fall short in cash at the date of my death, shall be prorated among said legatees and beneficiaries in accord with the amounts bequeathed to them;

"37. I authorize and direct my said executor named herein, E. S. Yeisley, as soon as he shall deem it expedient to do so, to sell for cash the notes and mortgages and all of the personal property of every kind and nature that comes into his hands as my executor, and not by me in this will bequeathed or disposed of and to deposit to the credit of my estate the proceeds realized from the sale of said personal property notes and mortgages in the First National Bank of Chelsea, Iowa, and I hereby authorize and empower my said executor to dispose of all of said notes and mortgages and personal property without an order of the court, to the best possible advantage and for the highest and best sum to be obtained for the same, and I further authorize and direct my said executor to keep my estate open until such time as all of my personal property, notes and mortgages have been converted into cash, I direct that my said executor shall pay to the legatees and beneficiaries named herein, the amounts bequeathed to them and which are stipulated to be paid from the proceeds of the sale of my notes and accounts. * * *"

Item 38 of the will provided for a prorating, as between the beneficiaries of the proceeds of the sale of notes and accounts, in the event of shortage, in the same manner as is provided in Item 36, above quoted, in reference to cash on hand. It will be noted that, by Item 34, John F. Johnston is the residuary legatee. He is the objector and appellant. The bequests made chargeable against "the cash I may have on hand at the time of my death" amounted to $17,000. The bequests charged against the "proceeds of sale of notes and accounts" totalled about $25,000.

At the time of the death of the testator, there was no cash on hand, in a literal sense, except the amount of $4.53. It was the holding of the trial court, and is the contention of the executor here, that the money in bank, in the form of short-time certificates of deposit, was intended by the testator in the description "cash I may have on hand at the time of my death;" whereas it is the contention of the objector that such time certificates of deposit should be classified as notes. The importance of this distinction to the objector is that, if his construction be adopted, it would carry these certificates of deposit into the resid-

uary estate, of which he is the legatee. It will likewise defeat *in toto* all the bequests made payable out of cash on hand.

There is no reference in the will, in terms, to the bank cer-. tificates or other bank deposits, if any there were at any time. The argument for appellant is that a time certificate of deposit is a negotiable instrument, and has all the legal incidents of a promissory note; that, therefore, these must be classified as notes and accounts. The premise must be conceded; the conclusion does not necessarily follow. In ascertaining the intention of a testator from the terms of his will, account must be taken of common parlance, which is often quite unconscious of the technical meaning of legal terms. Under present-day methods, "cash in hand," in a literal sense, is virtually nonexistent. The more the "cash," the less the likelihood that it will be kept literally "in hand." The deposits of the testator were in the bank of which he was part owner. All the certificates called for payment at the expiration of 6 months from date, with 4 per cent interest. At the time of the probate of the will, some months later, all were mature, or very nearly so. That the testator did not intend to include these time certificates as a part of his notes is indicated by the fact that he directed the executor to realize upon his notes by *selling* the same. For the purpose of realizing upon such sales, the payment of the bequests which were to be made from the proceeds of the sale of the notes, was deferred for one year. There could be no occasion for including time certificates among the assets which were to be sold. Some emphasis has been laid by appellant upon the expression "cash *in hand.*" But the will in terms refers to "cash *on hand.*" Whatever distinction is to be recognized between the two expressions, the terms actually used will not bear the emphasis thus put by appellant. Money in bank is money on hand. This is conceded by appellant as to money subject to check. We think it equally true, in common parlance, that money in bank, readily available, is deemed, for all practical purposes, to be money on hand, even though it be represented by short-time certificates, bearing interest. The will in terms purported to refer to all the classes of property of the testator. Unless his money on deposit in the bank was included in the description "cash which I may have on hand," then it was wholly omitted from the terms of the will. The very fact that

the testator gives the executor one year to convert the notes into cash by *sale* thereof quite negatives the inclusion of the bank certificates in that category. The bequests charged against that class of property were to be paid out of the proceeds of *sale* of the same. It is a very natural inference that the class of property described as cash on hand was intended to include the quick assets out of which payment could be made without delay. Many of the beneficiaries of the third class were beneficiaries also of the fourth class. Taking the will, therefore, in its entirety, we think the intention of the testator stands out clearly therein, and that the class of property described by him as ''cash on hand'' ·had reference to the money in bank, regardless of the fact that it was represented by short-time certificates. This was the holding of the trial court.

II. The only other point made in the objections relates to the allowance of $1,000 to the widow for a year's support. There is no showing of fact in the record ·before us in support of such objection, and appellant recognizes this defect in the record, and does not press the point. The order of the trial court is, accordingly,—*Affirmed.*

WEAVER, PRESTON, and DE GRAFF, JJ., concur.