No. 42031.

OCTOBER 17, 1933.

Heindel & Hunt, for appellant.

E. K. Bekman and W. G. Taylor, for appellee.

MITCHELL, J.—Charles P. Pottorff lived in Wapello county and held a position as a railroad conductor. He was injured in a railroad accident of some kind, which is not set out in the record, and from said injuries died. He left a will, which will was duly admitted to probate in the district court of Iowa, in and for Wapello county. One W. E. Aubry became the duly appointed, qualified, and acting administrator with the will annexed of the estate of Charles P. Pottorff, deceased.

The will was introduced in evidence, and is as follows:

"In the Name of God, Amen: I, Charles P. Pottorff being of sound mind and memory, but knowing the uncertainty of human life, do now make and publish this my last will and testament, that is to say: All Property or moneys That I may have at my Death be willed to my Mother Mrs. Mary E. Pottorff · Providing she is Living at that time if not then be Divided Equally Between my Nieces & Nephews But in Case I shall be married at that time will Revert to my wife and children should there be any."

On the 9th day of September, 1931, Mrs. Mary E. Pottorff Drew, the mother of Charles P. Pottorff, filed in the office of the clerk of the district court of Wapello county, Iowa, an application, asking that the court enter an order declaring the said Mrs. Mary E. Pottorff to be the sole beneficiary under the provisions of said will, and that the proceeds of all property belonging to said Charles P. Pottorff be turned over to and be paid to the said Mrs. Mary E. Pottorff. To this application there was filed a resistance by W. E. Aubry, the duly appointed, qualified, and acting administrator with the will annexed of the estate of Charles P. Pottorff, setting out that at the time of the death of the said Charles P. Pottorff, he was a married man, and that Laura M. Charlton-Pottorff survived her said husband, and that in accordance with the terms of the will which the said Charles P. Pottorff left, Laura M. Charlton-Pottorff, his surviving spouse, be decreed the sole beneficiary of the deceased under said will, and that she be entitled to all of the money and property belonging to said estate. The lower court found in favor of the construction of the will placed upon it by the administrator with the will annexed, and ordered that the administrator with the will annexed, after paying all indebtedness of the said estate and costs of administration, should turn over to the said Laura M. Pottorff, as surviving spouse of the deceased, all property belonging to the said estate. And from said order of the court an appeal has been perfected to this court.

There is no question in this record that Charles P. Pottorff, the decedent, was married to Laura M. Charlton in 1922 at Waukegan, Illinois; the marriage being performed by a pastor of the Central Christian Church of Waukegan. For some reason or other the marriage was not made public; but certain intimate friends of both parties were told about the marriage. In fact, the brother of Charles P. Pottorff, and his wife, were witnesses to the marriage. The decedent lived and worked in Iowa, while his wife, Laura M. Pottorff, worked in Utah. The reason given in the record why they did not live together was that Laura M. Pottorff had an invalid mother that she had to take care of. They visited each other at different times; Laura Pottorff generally traveling on a pass which the decedent secured for her as an employee of the railroad company. During the period of time that they were married they did not seem to bother each other very much or spend very much time

together. The exact reason for this is not set out in the record, but it seems to us that is immaterial. There can be no question in the record but that they were man and wife at the time the decedent died.

The decedent's mother was 84 years of age and he resided with her and took care of her during his lifetime. The undisputed evidence of the case shows that the decedent left his mother an insurance policy in the amount of $2,000. The record also shows that he left insurance in the amount of $9,000 to his wife.

The clause in the will of Charles P. Pottorff, in dispute, reads as follows:

"All Property or moneys That I may have at my Death be willed to my Mother Mrs. Mary E. Pottorff Providing she is Living at that time if not then be Divided Equally Between my Nieces & Nephews But in Case I shall be married at that time will Revert to my wife and children should there be any."

The question that is before this court is the interpretation of this section of the will. The will of the testator in the case at bar was in the testator's own handwriting; was written by himself. It is therefore the work of a layman, and, while no direct evidence of the skill of the testator is shown, the will itself is sufficient evidence to indicate that the testator was unskilled and unlearned in the use of technical terms.

This court has laid down certain rules governing the construction of wills. In the case of Buchanan v. Hunter, 166 Iowa 663, at page 668, 148 N. W. 881, 882, the court said:

"It is a cardinal principle of testamentary construction that the court reads the will of a testator as a whole, each provision thereof in the light of all the other provisions, and ascertains, if practicable, the testator's intent, and if such ascertained intent be lawful it will be respected and given effect accordingly."

Again this court said in the case of Canaday v. Baysinger, 170 Iowa 414, on page 418, 152 N. W. 562, 563, as follows:

"As has been frequently said, the intention of the testator is the polar star in the interpretation of a will. The will may be ever so inartistically drawn: it may be even ungrammatical in its terms, yet, if from the whole will, taking all the parts together, and giving

them full consideration, the court can determine what the intent of the testator is, that must prevail."

This court again, in the case of Richards v. Richards, 155 Iowa 394, at page 396, 136 N. W. 132, 133, says:

"If there be any rule at present, it is that the testator's intent, as gathered from the will, will prevail over any arbitrary or technical rules of construction; and that, no matter what the form of the will or the order in which the devises are given, testator's intent must prevail."

Thus, in the case at bar, taking the will as a whole, this court must ascertain the testator's intent. Rules of construction of wills are only useful when they are an aid to the court in ascertaining the intent of the testator. No arbitrary or technical rules of construction should prevail where the wording of the will itself expresses the testator's intent, and, even though the language may be awkward and unaided by punctuation, the testator has the legal right to make any distribution of his property he may elect, not contrary to law or public policy, and in doing so the testator may provide under what conditions certain devises and gifts will pass and become effective.

In the will in the case at bar at the time the will was drawn by the testator he was not married. The will says:

"All Property or moneys That I may have at my Death be willed to my Mother Mrs. Mary E. Pottorff Providing she is Living at that time if not then be Divided Equally Between my Nieces & Nephews But in Case I shall be married at that time will Revert to my wife and children should there be any."

It will be noticed that the testator used the words, "But in case I shall be married at that time". "At that time" meant at the time of his death. And it seems to us that the language which the testator used, "But in Case I shall be married at that time", clearly demonstrates that the testator intended if he was married at the time of his death the property should go to his wife, and if there were any children, to his wife and children.

In the appellant's argument the appellant uses the following language:

"In the instant case testator gave all of his property to his

mother providing she was living at the time of his death. There is no use reading any further in the will because that is the first provision, and therefore under the rule laid down governs."

In other words, the appellant asks that the court give effect to only a part of the will of the testator and ignore the balance, which is an express contingency or condition attached to the first portion of the will. The appellant cites no cases to support any such position. This court in the case of Guilford v. Gardner, 180 Iowa 1210, 162 N. W. 261, has stated the rule that it is not within the power of the court to sever the condition from the gift. On pages 1224 and 1225 of 180 Iowa, 162 N. W. 261, 265, this court said:

"To sustain the position taken by counsel the court must dismember the testator's statement of his intent and give effect to one clause or phrase thereof and deny any force or effect to the express qualification or condition attached to such devise. It should be kept in mind that, while a testator cannot make two inconsistent or repugnant devises and both be declared legally valid, it is undoubtedly within his power to devise a conditional or defeasible fee. * * *

"To read this will as applicants would have it read and totally disregard the condition attached to the devise to Charles E. Gardner is to destroy and not to construe. The sole justification and the only purpose of a judicial construction of a will is the development of the intent of the testator. In so doing, every provision of the instrument, if lawful in character, is to be given due effect. The court may not make a will for the testator, nor impose upon the will a forced or unnatural construction to accomplish what may seem to be a more just or appropriate distribution of his estate. The will in this case was made 25 years before the testator's death. No question can be raised as to his testamentary capacity at that time. During the remainder of his life, he had abundant opportunity to reflect upon the disposition he had made of his estate, and to determine whether he desired to make any changes therein. No change was made, and the will speaks as from the date of his death."

And so in the case at bar, the testator had a matter of years in which to give consideration and to reflect upon the manner of disposition of his estate and to make any changes therein. The testator knew the facts in the case. He knew of the manner in which he and his wife were living. He knew of the condition of his

mother; her financial condition. And yet, during all of these years that elapsed between the time of the making of the will and the death of the testator, the testator did not see fit to change the terms of his will. Thus, it seems to us, the wording of the will itself expresses the testator's intent, and that as the record clearly shows he was married at the time of his death, and that Laura M. Pottorff is his surviving spouse, it was the intent and purpose and meaning of the will that the said Laura M. Pottorff be the sole legatee and devisee thereunder, providing there were no children living at that time; the record showing there were no children. This is the finding of the lower court. Same is correct and must be, and it is hereby, affirmed.

ALBERT, C. J., and STEVENS, KINDIG, ANDERSON, and KINTZINGER, JJ., concur.