SUSIE THOMPSON, Appellant, v. EDWARD THOMPSON et al.,
Appellees.

**GUARDIAN AND WARD:   Ward's Estate—Receipt of Funds by
1  Third Person—Trusts.**   One who receives from a guardian the
funds of the ward, with knowledge that they are such, becomes,
on the ward's attaining majority, personally liable to the ward
for such funds, as on a trust.

**LIMITATION OF ACTIONS:   Minors—Termination of Disability—
2  Diligence in Bringing Action.**   An action brought within one
year after attaining majority, to enforce a trust attaching during
plaintiff's minority, and 15 years before plaintiff attained majority,
is timely.   (See Section 3453, Code, 1897.)

*Appeal from Story District Court.*—H. E. FRY, Judge.

MONDAY, JANUARY 15, 1917.

ACTION brought by a ward, on attaining her majority,
against her guardian, to recover an amount of money received by the guardian, as such, and against the husband of
the guardian, for the wrongful conversion of the fund received.   Judgment in the court below dismissing plaintiff's
appeal. *Reversed and remanded.*

*C. H. Hall* and *George C. White,* for appellant.

*Hunn & Jones,* for appellees.

GAYNOR, C. J.—This action was commenced in equity.   In
the petition as originally filed, the plaintiff alleges:

That, in July, 1901, a certain sum of money was due her
from certain railway companies on account
of injuries sustained by her through their
negligence; that a settlement was had, and
$500 paid on account thereof to her mother

1.   GUARDIAN AND
WARD: ward's
estate: receipt
of funds by
third person:
trusts.

and father, Elsie Thompson and Edward Thompson, defendants herein. She alleges that, thereafter, the defendants Elsie and Edward Thompson held the money in trust for her; that the same was a trust fund in their hands; that her father invested said money in certain land, and, thereafter, in 1912, conveyed the land in which the money was invested, to her grandfather, T. T. Thompson, who is now dead. She says that the transfer was made without any consideration. The executrix of T. T. Thompson's estate was made a defendant. Plaintiff prays that she have judgment against the defendants Edward and Elsie for the $500, with interest, and that a decree be entered imposing a lien upon the land in which the money was invested, for the amount of her claim; that the land be sold, and she be paid out of the proceeds.

The defendant Susan Thompson, executrix of the estate of T. T. Thompson, appeared and filed answer, denying each and every allegation. Thereafter, Edward Thompson filed an amended and substituted answer, denying every allegation of the original petition, and alleged defect of parties, misjoinder of parties, and statute of frauds. Elsie, the mother, filed no answer and made no defense. At the close of the trial, the defendant Edward further pleaded that, if any money belonging to the plaintiff was received by him from his co-defendant, Elsie Thompson, the same was returned to her, and denies that the same was received in trust.

The plaintiff filed an amendment to her petition, and says that she has demanded of the defendants Edward Thompson and Elsie Thompson the return of said money, and they have refused. Alleges further that they have said fund in their possession and the same is being held by them in trust, and prays that a trust be declared in the hands of these defendants and each of them, and that she be given interest as aforesaid. Prays for other equitable relief.

The cause was tried to a court without a jury. At the conclusion of the evidence, the court dismissed plaintiff's petition.

The evidence discloses that the father and mother are divorced; have been divorced for some years; that the plaintiff is living with her mother; that the mother was appointed guardian of the plaintiff and was guardian of the plaintiff at the time this money was received; that the railway companies settled with her guardian and paid to her guardian $500 in 1901; that plaintiff was about three years old at the time; that she was between 18 and 19 years old at the time this action was commenced. It appears that the settlement was made with the mother as guardian of the plaintiff; that the $500 was paid her in the form of a draft; that she did not cash the draft herself, but endorsed it and turned it over to her husband, who had full knowledge of the fact that she held it as guardian for the plaintiff; that he has never paid it back.

There was testimony to the effect that Edward Thompson, soon after receiving the money, said that he was going to loan it out for plaintiff, so that she would have something to fall back on when she was grown up and became of age.

Edward Thompson testified in his own behalf:

"I received the draft, endorsed by my former wife, from the Pullman Company for $500 about the 1st of July, 1901. I put the money in the bank in my own name."

He denies that he ever agreed to loan the money out for the plaintiff. He says further that, about 60 days after he received it, he checked it out and paid for furniture, at the request of his wife. He says:

"When the furniture was bought, we agreed that the money we received was just like finding it, and we might as well spend it, and so I took this money from the bank and paid for the furniture. Checked it out for my wife. Didn't give the money back to her. Montgomery & Ward got it for furniture and carpets. I took the money that I got from the railway company to pay for furniture for her house in my name; for her home and the home where I kept my family. I took the $500 and most of it went for furniture and

carpets. It was at my former wife's request that I took this money to furnish the house. I did not spend it; I objected to spending it. I lived with her a number of years after the furniture was purchased, and used the furniture. I am not willing to pay this $500 back. I lived with my wife about 10 years after this furniture was bought."

Though it does not appear in the abstract, it is asserted in argument, and not denied, that the plaintiff dismissed her claim against the executrix of the estate of T. T. Thompson, and any claim she made in her petition for a decree establishing a trust in the land described in the petition.

It appears that the defendant mother was appointed guardian of the plaintiff in Illinois, just prior to the time this settlement was made with the railway companies, and we take it the appointment was made for the purpose of effectuating the settlement. Upon the settlement, she received and held this money in trust for the plaintiff as plaintiff's guardian, subject to the order and direction of the probate court under which the appointment was made. It appears that no settlement has ever been made between the guardian and the ward. No claim is made in this suit, by the guardian or the father, for any accounting touching the guardianship matter. These defendants were the parents of the plaintiff, and are not claiming anything against this fund.

It will be noticed that the mother makes no defense. The father's defense is as shown in the pleadings and facts hereinbefore set out.

The only question left for trial was the liability of the father and mother to this ward (plaintiff), under the facts shown. The case was commenced in equity. The plaintiff invoked equitable relief, in that she prayed for the establishment of a resulting trust in certain land in which she claimed these defendants had invested her funds. She claimed this resulting trust as against the administratrix of the estate of T. T. Thompson. No evidence was introduced upon this phase of the case. The court had, therefore, to

deal only with those issues which related to the liability of these other defendants upon the facts shown. No objection was made to the forum at any stage of the proceedings. The pleading as to them, as finally framed, stated that the defendants Elsie and Edward Thompson have the funds in their possession; that plaintiff has demanded the same, and they have refused to pay it to her; that she is now of age; that the money is being held by them as a trust fund; and she prays that a trust be declared in their hands, and that she have judgment against them, and each of them, for the amount so received, with interest.

Much learning has been expended in this case in differentiating between express trusts, resulting trusts and constructive trusts. Much of the discussion is beside the mark, in view of the fact that the claim for a resulting trust in the property of T. T. Thompson was not urged upon the trial.

It must be recognized that a guardian who receives property for his ward receives it and holds it in trust for the ward, to be managed and controlled under the direction of the court making the appointment; that, when the ward reaches his majority, it is the guardian's duty to account for and pay the money over to the ward. The term "trust," in a general sense, is applied to a great variety of transactions. Every bailment is a trust, and the relation of trustee and *cestui que trust* is created whenever one person receives money for another's use, or engages to apply it to a particular purpose, and fails to do so.

It is apparent then that, when Elsie Thompson as guardian received this $500 for her daughter Susie, the plaintiff, she received it and held it in a quasi trust capacity, with no right to dispose of the money during the minority, except upon the order of the court. Upon the settlement, the title to the property received vested in the ward and was received by the mother in a quasi trust capacity for the owner, to be held subject to the direction of the court. She had no power to dispose of the property except upon the order of the court.

She makes no claim for an accounting against the ward. So far as this record discloses, she has no claim against the ward that involves an accounting. The father, knowing the capacity in which the mother held the property, knowing that the plaintiff, his daughter, was the owner of the property, knowing that the same was held in trust by the mother for the daughter, took this money, and, so far as this record discloses, converted it to the use of himself and his wife, or the use of himself and family, and, upon demand, refuses to pay it back to the ward after she attained her majority. The defendant Elsie makes no defense. The only defense the father seems to have interposed and relied upon, so far as his personal liability is concerned, is that this money was received by the mother as guardian; that she turned it over to him, and, with her consent, he expended it for furniture for the use of himself and family. In fact, the record presents nothing more than the case of one person's receiving money for another's use, or money which he was legally bound to hold for another, and having, without the other's consent, converted the money to his own use. Under the facts of this case, the plaintiff might have recovered under the common count for money had and received. If this defendant, Edward Thompson, had been the regular guardian himself, duly appointed, he might have retained the money until ordered by the court to pay it over, or until his ward became of age, but not longer. Having taken this money with knowledge of the fact that the plaintiff was a minor, unable to care for herself; that the property belonged to her; that she was under guardianship; and having retained it or expended it, whether with the consent of his wife or not, he became under legal obligation to pay it back to the ward upon attaining her majority; and that is all that the ward asks this court to require of him now.

The action was brought within one year after she reached her majority. No question in the record that the

defendants received this money; that it belonged to the plaintiff; that they have converted it to their own use; that they have not accounted for it; that they refused to pay it back to her; that she brought this action to recover it; that she is entitled to recover. She proceeded with proper diligence after reaching her majority—after the disability was removed.

2. *LIMITATIONS OF ACTIONS:* minors: termination of disability: diligence in bringing action.

Woerner, in his treatise on the American Law of Guardianship, Chapter 7, page 172, tells us that executors and administrators hold the legal title of decedents, to personal property, for the benefit of creditors and distributees; but that, in case of guardianship, the legal as well as beneficial title to both real and personal property remains in the ward; that the guardian can in no way bind, by any promise or contract of his own, the rights of the ward in the title to the property held by the guardian. He has a right of possession, but his possession is for the use and benefit of the ward; that the guardian's office is one of trust; and his possession of the ward's estate, as well as all his official acts in connection therewith, must be for the ward's, not his own, interest, and he cannot acquire title to the ward's property adverse to the ward.

As said in Chapter 8 of the same work, at page 205:

"Like all trustees, guardians are held to the exercise of the utmost good faith. . . . One of the most important duties of trustees, and hence of guardians, is to preserve the trust property intact, and to keep the funds of the ward separate from their own. If they are deposited in the bank to the credit of the guardian, in his own name, it is equivalent to a conversion of them to the guardian's use."

In *Jacobs v. Jacobs,* 130 Iowa 10, 17, it is said:

"If the evidence shows that Leah Jacobs (the mother) received the money of her son Moses under an implied agreement to keep it for him and ultimately return it to him, then

all moneys thus received by her from him constituted a trust fund in her hands, to which her husband could acquire no right by transfer of the securities without consideration, and the husband took the securities with an obligation to account for them to their real owner. The present wife, so far as proceeds of securities have been put in her name, holds such proceeds under like obligation."

The facts at bar are stronger than they were in the *Jacobs* case. Under the record here submitted, the plaintiff is entitled to judgment against Edward and Elsie Thompson for the full amount of her claim, with interest, and the court erred in dismissing her cause as to them. The cause is, therefore, reversed and remanded, with instructions to enter judgment against these defendants for the full amount of plaintiff's claim, with interest.—*Reversed and remanded.*

LADD, EVANS and SALINGER, JJ., concur.