MARY SHUMAKER et al., Appellees, v. HENRY BOHROFEN et al., Defendants, PETER BOHROFEN, JR. et al., Appellants.

No. 41877.

OCTOBER 24, 1933.

John McLennan, and Guy H. Hall, for appellants.

Geo. J. Dugan, for appellees.

Evans, J.—The question involved herein is whether the holder of a note against a ward under guardianship may sue out a writ of attachment and levy the same upon the real estate of a ward and may thereby ignore the guardianship proceeding and the *custodia legis*. At the time the action was brought, one of the makers of the note, Peter Bohrofen, Sr., was a person of unsound mind and under guardianship. He was the owner of three farms,—one comprised 80 acres located in Dallas county; and another one of 160 acres in Greene; and a third one of 160 acres in Kossuth county. These farms were incumbered for a sum total of about $8,000. There were other outstanding personal obligations and these comprise the notes in suit. The plaintiff's claim thereon amounted to about $2,500. The principal maker of the note in suit was Henry Bohrofen. As grounds of attachment, the plaintiff alleged as follows:

"(1) That the defendants or some of them have disposed of their property in whole or in part with intent to defraud their creditors;

"(2) That the defendants are about to dispose of their property with intent to defraud their creditors;

"(3) That they have property or rights in action which they conceal;

"(4) That they are about to convert their property or a part thereof into money for the purpose of placing it beyond the reach of their creditors;"

The defendants named in the petition were the two makers of the notes and the guardian. No particular defendant was named in the grounds for an attachment. The only property upon which the attachment was levied, was the real estate of the ward. The only attack made upon the writ of attachment was made by the guardian on behalf of his ward. At the time the action was commenced, proceedings were pending in the probate court wherein the guardian prayed authority to mortgage a part of the real estate for the purpose of paying a specified debt. The probate court made such an

order. Immediately preceding the entry of such order, the writ of attachment was levied. Its apparent effect was to render the probate order futile.

. This situation instigated the motion to dissolve the attachment.

Concededly it is the general rule that the property of a ward in the hands of his guardian is in *custodia legis* and that it remains in such custody subject to the orders of the court charged with the responsibility therefor. Concededly also this general rule is subject to the legislative will and may be modified or abrogated by legislative act. As early as Martin v. Davis, 21 Iowa 535, this court announced and sustained the rule. In that case the judgment-creditor-plaintiff issued an execution and levied the same by garnishment of a receiver. It was held that the property thus levied on was "in the custody of the law, and not properly or legally liable to seizure by an officer under an execution. * * * They might have secured the recognition and enforcement of their rights in the attached or garnished property, by application on petition or motion to the court having custody of it. Having improperly seized the property by levy under execution, the appellants were not prejudiced by the order of the court made on the motion to discharge the levy and release the property from it."

 The foregoing pronouncement has been repeatedly adhered to. Pugh v. Jones, 134 Iowa 746, 112 N. W. 225, 11 L. R. A. (N. S.) 706, 120 Am. St. Rep. 451, 13 Ann. Cas. 499; Malone v. Moore, 208 Iowa 1300, 227 N. W. 169.

Counsel for appellee contends that the rule thus announced has proper application only to cases of *garnishment* and that it has no application to a case of attachment. The appellee has not made clear a reason for such a differentiation and we are unable to perceive one.

It is an interesting observation that no appeal has ever hitherto come before this court which involved the question now raised. No litigant before us has claimed the right at any time to *attach* the property of a ward under guardianship. This statement is subject to one qualification presently to be stated.

In Coffin v. Eisiminger, 75 Iowa 30, 39 N. W. 124, the plaintiff brought an attachment suit against the guardian and the ward and took judgment thereon by default, including a judgment against the guardian as garnishee. Up to this point all proceedings were had without contest or objection. At a later time the plaintiff ap-

plied to the probate court for an order directing the guardian to pay the judgment. At this point the guardian resisted the application on various grounds. The court entered an order directing the guardian to pay. It will be noted that though an attachment was issued and levied in that case, nothing was ever claimed for it therein. The final reliance of the claimant for the collection of his claim was upon the order of the probate court for which he applied. The following quotation from the opinion therein is a sufficient indication of the theory of recovery finally adopted by the plaintiff and approved by the court:

"All money should be paid out under the direction of the court. Bates v. Dunham, 58 Iowa 310, 12 N. W. 309. It may be said that the court had already ordered the payment of this money in the garnishment proceedings by the rendition of a judgment therein; hence that the order made in this proceeding is a useless form. It is true that the same court rendered the judgment and made the order, but in one case it was acting as a court of general civil jurisdiction, while in the other it was acting as a probate court. In the first case the probate jurisdiction was neither invoked nor exercised. It was necessary for the probate court at some time to act upon the matter of using money to pay the judgment. Whether this could have been anything more than a matter of form, in view of the fact that judgment had already been rendered, we need not determine. It was the duty of the guardian to pay the judgment under the direction of the probate court. He failed to pay the judgment, and neglected to ask the instruction of the probate court in regard to it. Under these facts it was proper for plaintiff to obtain an order to compel the guardian to perform his duty."

In Hawk v. Harris, 112 Iowa 543, 84 N. W. 664, 84 Am. St. Rep. 352, an attachment had been levied upon certain property and was in full force and effect at the time the guardian was appointed for the owner thereof. Upon the creation of the guardianship, the guardian moved to dissolve the attachment. This motion was on the ground that a guardian had now been appointed and that the guardian was entitled to the management of the property regardless of the fact that there was no guardianship when the attachment was levied. We held in that case that the appointment of the guardian did not change the status existing at and before such appointment. We said:

"This *case must not be confounded with those wherein the property was in custodia legis at the time the attachment on execution was issued.* When the property was attached it was not in *custodia legis,* but became so by the levy of the attachment. No question is made but that the plaintiff would have been entitled to execution for the sale of the attached property were it not for the appointment of the guardian. Any control that the probate court acquired over this property through its guardian was certainly subject to the existing conditions, and we have seen that one of the conditions was that the property was in custody of the law court, with full power to apply it to the satisfaction of its judgment."

The opinion commented on the Coffin case, as follows:

"In Coffin v. Eisiminger the guardianship existed at the time the action was brought and attachment issued, wherefore whatever belonged to the estate was in custody of the probate court. The guardian was garnished under the attachment, and it was under these circumstances that we held that it was proper for the judgment creditor to apply to the probate court for an order commanding the guardian to pay the judgment. We said: 'It was the duty of the guardian to pay the judgment under the direction of the probate court. He failed to pay the judgment, and neglected to ask the instruction of the probate court in regard to it. Under these facts, it was proper for the plaintiff to obtain an order to compel the guardian to perform his duty.'"

There is nothing in our previous decisions which forbids a claimant from seeking an adjudication of his claim in the district court, as such, and in a purely personal action. Such adjudication being had, it becomes the duty of the probate court to direct the guardian to pay the claim. This seems to be the normal method to be followed in the absence of statutory variation. There is one class of guardianship cases to which a special statute applies. This statute has been in force under successive Codes for many years. In our present Code it appears as sections 3595 and 3598. These are as follows:

"3595. Insane persons and persons legally liable for their support shall remain liable for the support of such insane. The county auditor, subject to the direction of the board of supervisors, shall enforce the obligation herein created as to all sums advanced by the county.

"3598. The estates of insane or idiotic persons who may be treated or confined in any county asylum or home, or in any private hospital or sanitorium, and the estates of persons legally bound for their support, shall be liable to the county for the reasonable cost of such support, or so much thereof as may be determined by the board of supervisors."

In Gressly v. Hamilton County, 136 Iowa 722, 114 N. W. 191, 15 Ann. Cas. 354, the foregoing sections were construed to charge the *property* of patients at the insane hospital with liability to the county for the costs of their maintenance and that the collection of the same was to be made in the same manner as that of any other claim. It was therefore held in that case that collection could be made by *execution*. This holding purported to be based upon an interpretation of the statute above cited. It was based also upon the assumption that these sections had already been interpreted in Thode v. Spofford, 65 Iowa 294, 17 N. W. 561, 21 N. W. 647. The case adds some confusion to the general subject under consideration. For our present purpose it is perhaps enough to say that it has application only to the class of cases defined in the cited sections and that therefore it has no application to the case before us. We think it must be said that it is not logically consistent with our other cases. Because it is the only case in our reports that sustains the right of execution against property in the hands of a guardian, we are disposed to question its soundness notwithstanding that it is not controlling of the case at bar. The interpretation put therein upon the sections quoted above is not of itself persuasive. The writer of the opinion predicated the interpretation upon what was said in the case of Thode v. Spofford, 65 Iowa 294, 17 N. W. 561, 21 N. W. 647. We quote from the opinion, including its quotation from the Thode case:

"The only reason for denying the right of execution is that the property is already in *custodia legis,* and the court should direct its officers to make payment of the judgment, and see that its orders are enforced by contempt proceedings or otherwise. This, of course, is generally the orderly and proper way to dispose of property in the custody of the court. *But the Legislature may undoubtedly provide for the enforcement of such claims as were there presented by ordinary processes.* Whatever reasons may exist for holding that an execution may not be levied upon property of an insane person, the

question is settled for this state, we think, in Thode v. Spofford, supra, wherein it is said 'Counties are authorized to collect from the property of *patients* any sum paid by the county in their behalf; the collection is to be made like any other claim, by action, judgment, and execution; and there is no lien until it is obtained by the judgment of the court.' "

The statement quoted from the Thode case that the "collection is to be made like any other claim, by action, judgment, and execution," is wholly dictum in that case. No *execution* was involved in the Thode case. That case was a contest over a tax title. The fee owner was an insane person. Her guardian sought to redeem from the tax sale. The tax-title holder claimed the right to recover the amount paid by him to Polk county for hospital support, on the theory that the same was a lien on the fee of the insane owner. The court held that the unliquidated claim was not a lien. That was the only question to be decided at that point. The method and manner of collecting the claim, as set forth in the opinion, was purely voluntary on the part of the writer. It was no part of the issues in the case. No execution had been issued or demanded by the plaintiff therein.

The trial judge predicated his conclusion herein upon this finding in the Gressly case. He reasoned that if *custodia legis* might be lawfully invaded by an *execution*, why discriminate against an *attachment*? The reasoning is cogent and is indicative of the confusion which the Gressly case has added to the subject. But it must be said, nevertheless, that the case at bar does not come within the classification of the quoted sections of the statute.

II. We have already set forth the grounds of the attachment. These were in substance that the defendants were disposing of their property with intent to defraud. The statute permits the defendant to move for a dissolution of the attachment upon a showing that it ought not to have issued. These grounds are the ordinary grounds, upon which prayer for attachments is predicated. The statutory chapter (see section 12078 et seq.), which provides for attachments, is the race course upon which the "race of creditors" is run. After a debtor dies, the race course is closed. A dead debtor cannot defraud his creditors; nor can he *"intend"* to. It is quite as true in the very nature of the case that a person of unsound mind under guardianship cannot defraud his creditors. He can act only through his guardian; and the guardian can act only under the directions of

the court. What function therefore can be attributed to statutory grounds of attachment in such case? To say that a person of unsound mind is about to dispose of his property with intent to defraud his creditors is of necessity a falsehood upon its face. To say that the claimant is entitled under the general statute to the provisional remedy of an attachment is only to accord to him the privilege of conscious perjury. To permit a claimant to prove or adjudicate his case in either forum, and to impose upon the probate court the duty to order payment by the guardian, conserves to the creditor every substantial right, which is reasonably available in the nature of the case. If the estate of the ward is solvent, the order of the court directing the guardian to pay is an adequate remedy. If the estate be insolvent, then the estate must be settled pursuant to the provisions of section 12630. This section provides:

"12630. If the estate of such person is insolvent, or will probably be insolvent, the same shall be settled by the guardian in like manner, and like proceedings may be had, as are required by law for the settlement of the insolvent estate of a deceased person."

This means that creditors must take pro rata and that no preferences can be acquired by a statutory foot race.

We think the attachment should have been dissolved. It is so ordered.

The judgment below is accordingly reversed.

ALBERT, C. J., and CLAUSSEN, DONEGAN, and KINDIG, JJ., concur.