IN RE ESTATE OF CHARLES HOLDORF.

WILLIAM F. C. HOLDORF et al., Executors.

No. 44750.

JANUARY 16; 1940.

REHEARING DENIED APRIL 5, 1940.

John J. Hess, for appellants.

Kimball, Peterson, Smith & Peterson, for appellees.

G. C. Wyland, for estate of Charles Holdorf.

MITCHELL, J.—Charles Holdorf, whose will is under consideration, was for many years prior to his death a resident of Shelby county, Iowa, where as a thrifty and successful farmer he had accumulated an estate of considerable magnitude. At the time of his death, which occurred October 28, 1933, he left surviving him as his sole and only heirs at law and beneficiaries under his will his five children, William F. C. Holdorf, Ida Bladt, Elsie Holdorf Billingsley, Viola Holdorf Myers and Oren Holdorf, all of whom were then grown to manhood and womanhood.

During the month of August 1928 Charles Holdorf conceived the idea of making a partial distribution of his estate to his five children. At that time he was the owner of Iowa

farm land in excess of 600 acres, and in addition thereto he possessed a considerable amount of other property. He believed that Iowa farm land was the safest and soundest investment which could be made, and a heritage of this particular type was what he most desired to pass on to his children. He consulted with his attorney, and then submitted to each one of his five children the same proposition. That he would give to each child $15,600 in value in real estate, requiring each child to pay him 3½ per cent interest upon this amount or $546 per annum, annually during the joint lives of himself and his wife. He figured all of his land at the approximate value of $175 per acre. It must be kept in mind that this was in the year 1928 before the terrific drop in value of Iowa farm land, and no one says that it was not a fair value at that time. Charles Holdorf was thinking in terms of land rather than in terms of money. When he came to divide up his land, in his judgment, it could only be divided into four distinct farms. To meet this situation he concluded to give to two of his children, the son William and the daughter Ida, an undivided one-half interest in 181.1 acres of land. All of his children with the exception of Ida accepted their father's proposition, and various pieces of farm land were deeded to them, and they executed and delivered to him an agreement to pay the annual sum of $546 during the lives of Mr. and Mrs. Holdorf.

One cannot read this record and come to any other conclusion but what it was the desire of this father to divide equally his property among his five children.

He transferred to four of his children, $15,600 worth of farm lands, and they executed agreements with him which will be referred to later in this opinion. In order that Ida, who had refused to accept the proposition made by her father, would receive her share he made a will dated August 23, 1928. It is over the construction of paragraph 2 of this will that this controversy arises.

Paragraph 2 is as follows:

"In the event that I shall not have given unto my daughter, Ida Bladt, land of the value of $15,600.00 and received from her an annuity agreement for the payment of $546.00 per year to myself and wife during our joint lives and to the survivor of us, and in order to place her or her legal heirs upon an

equality with my other four children to each of whom I have given and conveyed land of the value of $15,600.00 subject to such annuities, then and in that event I hereby authorize, empower and direct my executors to convey unto my said daughter, or to her heirs if she be dead, any of my land of which I shall die seized or possessed to the extent and value of $15,600.00 to be by her and her legal heirs selected, and in the event that I shall leave no land which she or her heirs desire to select, then I authorize, empower and direct my executors to purchase for her or her legal heirs and invest the sum of $15,600.00 of the funds of my estate in good Iowa land, she or her legal heirs to have a voice in the selection thereof, the title thereto to be invested in her or her legal heirs, but, in either event, she or they shall execute an agreement to pay my wife the sum of $546.00 per year annually on the first day of January of each year during the lifetime of my wife, the same to be made payable at the Avoca State Bank of Avoca, Iowa, and to draw interest at the rate of eight per cent after maturity, which said annuity shall be amply secured by a continuing lien on such real estate. In the event that my wife shall be dead at the time of making such conveyance to my said daughter or her legal heirs, such annuity shall not be exacted or required.

"If my said daughter or her legal heirs fail to select such land of the value of $15,600.00 and have the title thereto vested in her or their names as provided, within one year from my death, then this bequest shall abate, lapse and become void and of no effect, it being my intention that my said daughter or her legal heirs shall not be entitled to receive such bequest otherwise than in land as above provided."

On October 28, 1933, Charles Holdorf died and shortly thereafter the will was probated. The wife of the testator, Sophie Holdorf, having preceded him in death, and she being one of the executors named in the will, Ida Bladt was designated along with her brother, William, who was named in the will, as one of the executors. On October 24, 1934, Ida Bladt filed an application setting forth that she is one of the executors of the last will and testament of Charles Holdorf. She then set out in full item 2 of the will, that the said estate does not have money with which to purchase land of the value of $15,600 and will not have such money so that it could purchase land for Ida Bladt within the year as provided in the will.

The application then states:

"3. That Ida Bladt does hereby demand of the executors that they purchase for her good Iowa land of the value of $15,600.00 from funds of the estate when available. She demands of said executors that they purchase said land for her benefit, and stands ready to make recommendation and to have a voice in the selection at such time as said sum of $15,600.00 shall be available, and immediately thereafter. That at this time there would be no possibility of her designating or selecting said land inasmuch as the money is not available for the reason that the price of land is variable and could not be ascertained until such time as the money is available for such use.

"4. That said Ida Bladt is now ready to perform each and every obligation resting upon her but is prevented from doing so because of the condition of the estate and the inability of the executors to purchase said land.

"5. That said Ida Bladt is informed and believes that the money will be available eventually and that she should not be deprived of her interest in the estate to make it equal with the other heirs simply because the estate does not have funds with which to purchase land as provided in the will at this time."

She then prays that her application be set down for hearing, upon such notice as the court may direct, and that the court make such order "as may be deemed just and equitable".

Notice was given as the order of court provided, and on the 27th day of October, 1934, Hon. Ernest M. Miller, one of the then presiding judges, entered the following order:

"ORDERED, ADJUDGED AND DECREED that the time within which Ida Bladt shall have the right to make selection of land within the provisions of the will of Charles Holdorf shall be extended until such time as there shall be sufficient money in said estate with which to buy land, or until such time as there be hereafter fixed by the court upon notice to said Ida Bladt, and that said provision in said will limiting the time to one year is hereby extended with the same force and effect as though provided in said will.

"(Signed) Ernest M. Miller,
"Judge of the District Court."

On July 2, 1936, three of the children filed a petition to abate, lapse and declare void item 2 of the last will and testament of Charles Holdorf.

The material part of said petition is as follows:

"3rd. That under Item Two of the will of the said Charles Holdorf, as above set out, it was provided that if Ida Bladt, daughter of the deceased, the beneficiary of said item of his will, or her legal heirs, failed to select land of the value of $15,600.00 and have title thereto vested in her or their names within one year from the death of the decedent, that the bequest set out in said Item Two of said will shall lapse and abate and become void and of no effect. That said provision of said Item Two of said will was in no manner complied with during the year following the death of the decedent and the same has now abated, lapsed and become void and of no effect.

"4th. These petitioners show to the court that they are residuary legatees under said will and are entitled to share in the decedent's residuary estate and are entitled to participate in said lapsed, abated and now void bequest."

On May 25, 1938, William F. C. Holdorf, one of the executors filed an application, the material part is as follows:

"(2) That the provisions of Item Two of the last will and testament of the said Charles Holdorf be held to be void for uncertainty, indefiniteness and ambiguity, and that any and all rights, if any, created by any of the provisions of said Item Two be held to have lapsed and abated by reason of a failure to perform or comply with the provisions thereof in the time and manner set forth therein.

"(3) That the distribution made to the four children other than Ida Bladt be established and considered as advancements made to such distributee and that the value of the same be ascertained in each instance and determined as of the date of the death of the testator and that the valuation of each instance so ascertained be considered and treated as advancements in the amount so determined made to each of said donees."

Ida Bladt filed a resistance, and there was a trial at which evidence was offered and the court entered an order holding that item 2 of the will had not lapsed, and that Ida Bladt has the right to make selection of land under the provisions of said

item 2 of said will, until such time as there shall be sufficient money in said estate, or until such time as shall be hereafter fixed by the court. That the value of $15,600 fixed by said decedent for the land to be purchased for said Ida Bladt shall be determined as of October 28, 1933.

The co-executors and three of the other children have appealed.

Many questions are argued but as we look at this record, if Judge Miller had jurisdiction to enter the order, dated October 27, 1934, then the appellants must fail in this appeal.

It is conceded that notice of the hearing on Ida Bladt's application to extend the time within which she could make selection of land within the provisions of the will of her father, Charles Holdorf, was given to the appellants as provided by the order of court. One of them appeared by an attorney. The appellants claim however, that Judge Miller did not have jurisdiction of the subject matter, and for that reason no valid or binding order could be made.

What was the question before the court to decide? It was simply the construction of a certain paragraph of the will. Ida Bladt had filed the application in which she stated to the court that she was at all times during the year ready, willing, and able to make selection of land of the value of $15,600, but that the estate did not have $15,600 with which to purchase land. Nor was there any indication as to when that sum would be available. That she was prevented from exercising the selection provided for in the will because of the condition of the estate and not due to any act or neglect of her own. This was done within the year. Judge Miller did not attempt to substitute the judgment of the court for the wishes and intentions of the testator. After a hearing he simply construed the intention of the testator to be that Ida Bladt's share of his estate should be in Iowa land to be purchased by the executors when they had sufficient cash on hand to purchase the land as provided in the will.

We are not confronted here with the question as to whether Judge Miller was right or wrong in the making of the order of October 27, 1934. It was made after giving notice. No appeal having been taken, it became a finality and appellants are now bound by that decision.

It is next claimed that the lower court erroneously found

that the will of the testator should be construed as speaking as of the date of the death of the testator, rather than as speaking of the date of its execution. It is a fundamental doctrine in the construction of wills that where the language is plain and unequivocal, there is no room for construction. In other words, where the language is clear, both in expression and meaning, rules of construction are inapplicable. This is the rule laid down in In re Estate of Thomas, 220 Iowa 50, 51, 261 N. W. 622, as follows:

" 'Twenty-second: All the residue and remainder of my property; personal or real, I will, devise and bequeath to the following persons, to wit: * * *

" 'The twenty-second paragraph I desire changed and the following named children of my sister added as residuary legatees and devisees, to wit: Jennie Downey, Grace Landmesser, Roscoe Downey and Orr Downey, it being my intention to divide my estate among all my nieces and nephews. All real estate to be sold and proceeds divided.' * * *

"To summarize: The deceased had twenty nieces and nephews, sixteen of whom are named as beneficiaries under the will; thus omitting four, to wit, Jesse W. Montgomery (Jesse W. Stewart), Emma, Wayne, and Myra Stewart. * * *

"It is a fundamental doctrine in the construction of wills that, where the language is plain and unequivocal, there is no room for construction. Smith v. Runnels, 97 Iowa 55, 65 N. W. 1002; Jordan v. Hinkle, 111 Iowa 43, 82 N. W. 426; Scott v. Scott, 132 Iowa 35, 109 N. W. 293; Guilford v. Gardner, 180 Iowa 1210, 162 N. W. 261. In other words, where the language is clear, both in expression and meaning, rules of construction are inapplicable."

The court held that the residuary estate should be divided equally among the 20 nieces and nephews.

To like effect is the statement to be found in Guilford v. Gardner, 180 Iowa 1210, 1224, 162 N. W. 261, 266. In that case the court has said that the court may not make a will for the testator nor impose upon it a forced or unnatural construction to accomplish what may seem to be a just or more appropriate disposition of his estate. In arriving at this conclusion, the court said:

"To read this will as applicants would have it read, and totally disregard the condition attached to the devise to Charles E. Gardner, is to destroy, and not to construe. The sole justification and the only purpose of a judicial construction of a will is the development of the intent of the testator. In so doing, every provision of the instrument, if lawful in character, is to be given due effect. The court may not make a will for the testator, nor impose upon the will a forced or unnatural construction to accomplish what may seem to be a more just or appropriate distribution of his estate. The will in this case was made 25 years before the testator's death. No question can be raised as to his testamentary capacity at that time. During the remainder of his life, he had abundant opportunity to reflect upon the disposition he had made of his estate and to determine whether he desired to make any changes therein. No change was made, and the will speaks as from the date of his death."

The will in the case at bar is clear and definite. No doubt exists as to the intention of the testator from a reading of the will. It provides in no uncertain terms that the executors of his estate are to purchase for Ida Bladt or her heirs good Iowa land of the value of $15,600. The will may not be just as we would have made it, but there being no uncertainty or ambiguity in the will itself, neither the trial court nor this court may interfere or change the will. It spoke as of the death of the testator, and the lower court was right in so holding.— Affirmed.

CHIEF JUSTICE and all JUSTICES concur.