FRANK M. HARADON, Guardian and Executor, Appellee, v. BOARDMAN & CARTWRIGHT et al., Appellants.

No. 45067.

NOVEMBER 19, 1940.

REHEARING DENIED FEBRUARY 21, 1941.

Clarence Nichols and Boardman & Cartwright, for appellants.

C. H. Van Law, for appellee.

MILLER, J.—Martha E. Gillespie, also known as M. E. Gillespie, was an elderly woman, who had lived the life of a recluse and became possessed of a fortune of approximately $75,000 in government bonds and other securities, payable to bearer and not registered. On April 6, 1933, these bonds were in a safety deposit box in the Fidelity Savings Bank of Marshalltown. Mrs. Gillespie had lost her key to the box and was obsessed with the idea that her bonds had been removed from the bank. She contacted defendant Boardman, who was a stockholder, director and attorney for the bank. He accompanied her to the bank. The box was opened with an electric drill. The bonds were intact. However, Mrs. Gillespie, against the advice and even protest

of Boardman and the officers of the bank, removed the bonds and took them home. The bank insisted upon and received a receipt for the bonds. Shortly thereafter, the bonds were stolen from Mrs. Gillespie's home.

W. W. Akers, chief of police at Marshalltown, undertook an investigation of the theft, and plaintiff, Haradon, was appointed temporary guardian of the property of Mrs. Gillespie, as a person of unsound mind. On May 2, 1933, the commissioners of Marshall county found that Mrs. Gillespie was not insane. Later, on March 8, 1934, she was adjudged insane and Haradon was appointed permanent guardian of her property.

The latter part of March 1934 Akers received information implicating one H. G. Cowell of Marshalltown with the theft of Mrs. Gillespie's bonds. He was apprehended at his home, a struggle ensued in which Cowell was fatally shot. Some $21,000 was found in his home, which was later traced as proceeds from some of the stolen bonds. $8,000 was found hidden in Marshalltown and $19,000 was found on deposit in certain banks in Ohio and Kentucky.

On April 5, 1934, Haradon, as guardian, made application to the probate court for authority to employ counsel to establish his right in the proceeds from the sale of his ward's stolen bonds and to do any and all things necessary to fully protect any interest in such proceeds. On April 7, 1934, the court entered an order authorizing him to employ counsel and ordering him to take such steps as he might deem necessary to protect any interest in funds purporting to belong to his ward or to him as guardian. On April 13, 1934, upon proper application, Haradon was authorized to offer a reward of ten percent of the value of any of the stolen property recovered. Some $50,000 was recovered. Defendants were employed and acted as Haradon's attorneys in effecting such recovery. They were largely, if not primarily, responsible for such recovery. They were paid for such services and the fees pertaining thereto are not involved herein.

In the meantime, by April 1936, certain information had been developed to the effect that some bonds of the city of Marshalltown and some county road bonds, which were included among the stolen securities, had been destroyed by the thieves.

Judge B. O. Tankersley, one of the judges of the 17th Judicial District, and a resident of Marshalltown, made the orders involved herein. He was interested in recovering the stolen bonds, made repeated inquiries of Haradon and received uniformly unsatisfactory replies. He inquired of defendants and was advised that they could not get Haradon to act. Haradon's inactivity was due to some extent to very poor health. At the suggestion of Judge Tankersley, the defendants, on April 4, 1936, filed a written proposal to make the necessary investigation and pay the expenses thereof and render the necessary legal services to recover for the estate said stolen bonds or procure the issuance of new securities in their stead, for a contingent fee of 50 percent of the amount recovered. On the same day, Judge Tankersley entered an order as the probate judge in Marshall county, accepting the proposal and directing, authorizing and empowering Haradon, as guardian, to enter into a contract under the terms and conditions stated therein. Such a contract was submitted to Haradon and he declined to execute it, until he had seen the heirs of the estate. The contract was never signed by Haradon.

Judge Tankersley later inquired of defendants concerning the progress of the matter and was advised that Haradon was still inactive. On September 3, 1936, at the suggestion of Judge Tankersley, defendants filed an application which recited that $26,500 of the bonds had not been recovered, specifically describing said bonds, apparently from the receipt that the Fidelity Savings Bank had received on April 6, 1933, and asking for authority, as attorneys for the guardian, to institute proceedings to secure the reissuance of said bonds, ''upon the terms and conditions as heretofore ordered by the court.'' On the same day, Judge Tankersley signed an order, which was entered in this estate, authorizing and directing defendants to institute such proceedings as attorneys for Haradon, guardian, upon a contingent fee of 50 percent, and authorizing and directing Haradon to cooperate therein.

Pursuant to such order, defendants, as attorneys for Haradon, guardian, instituted proceedings against Grundy county and, on November 23, 1936, recovered judgment in the sum of $13,567.50 on certain Grundy county road bonds as-

serted to have been stolen from Mrs. Gillespie and destroyed by the thieves. The judgment required an indemnifying bond for 125 percent of the amount of the judgment. Defendants filed a bond in the sum of $8,456.25, collected one half the amount of the judgment and retained it as their contingent fee, receipting for the same as attorneys for Haradon, guardian. This activity was reported to the probate court and approved by Judge Tankersley by order entered December 5, 1936. Haradon has declined to file any indemnifying bond and the balance of the judgment remains unsatisfied.

A similar suit was commenced against the city of Marshalltown and, on January 28, 1937, judgment was recovered by defendants, as attorneys for Haradon, guardian, in the sum of $1,646.28. This judgment likewise was conditioned upon the filing of an indemnifying bond.. Such a bond, in the sum of $2,000, was filed by defendants, the judgment was collected, 50 percent of the proceeds tendered and declined by Haradon, defendants retaining 50 percent as their contingent fee.

Mrs. Gillespie died April 6, 1938, and, on April 20, 1938, Haradon was appointed executor of her estate and qualified as such. On July 19, 1938, Haradon, in his capacities as guardian and executor, made application for authority to employ counsel in reference to his claims against defendants. On the same day, Judge Tankersley entered an order authorizing the employment of C. H. Van Law in connection therewith.

On August 27, 1938, petition in equity was filed asking for an accounting from defendants. Count No. I is based upon the attorney fee collected in connection with the suit against Grundy county and count No. II is based upon the recovery against the city of Marshalltown. Each count asserted that the orders of the probate court, authorizing the litigation and the fees, were entered without jurisdiction and void.

The answer asserted that the litigation was conducted under order of court and that said orders were valid. An additional defense was asserted, to wit: That, by bringing this action, plaintiff ratified each transaction. By way of cross-petition, defendants asked that the court require plaintiff to indemnify them from any possible loss by reason of the indemnifying bonds filed by defendants.

There are numerous other allegations in the pleadings, comprising some 45 pages of the abstract, but the issues above stated appear to be the ones that are controlling here.

The facts above reviewed, having been established by the evidence, the court determined that the orders, entered by Judge Tankersley, authorizing the two actions complained of on a contingent fee basis, were void because entered without jurisdiction. In so holding, the court states, ''I think, that the case hinges on the narrow question of whether or not the Court orders, under which the defendants have purported to act in the collection of these municipal bonds, were valid or void. If valid, they cannot be collaterally assailed in this manner; and I should have neither the power nor the willingness to sit in review of them, in any respect whatever. If void, however, plaintiff would have the right, as we shall presently see, to call on defendants for a proper accounting and turning over of the proceeds thereof.''

The court held further that plaintiff could avail himself of defendants' services without ratifying the contingent fee contract, but in so doing would be required to pay a reasonable fee for such services. Accordingly, the decree entered judgment against defendants for $6,765 on count No. I and for $1,646.28 on count No. II, with interest and costs, granted defendants 30 days within which to establish a reasonable attorney fee to be credited against such judgment, and required plaintiff to indemnify defendants from any liability on the two indemnifying bonds filed by them. From such decree, both parties appeal.

I. Defendants' appeal, while presenting a number of questions for our decision, primarily asserts two propositions. First, that the orders of Judge Tankersley were entered when he had jurisdiction as the probate court for this estate, and, since no direct attack has been made against such orders, they stand conclusive against the guardian and cannot be the subject of a collateral attack in this independent action in equity; second, that, by bringing the action, the guardian ratified the transactions wherein defendants acted as his attorneys and, having undertaken to ratify such transactions, he is estopped to maintain this action.

546

■ We will first consider the question of the jurisdiction of the court to enter the orders which plaintiff seeks to subject to collateral attack. As above pointed out, the trial court recognized that such orders are not subject to collateral attack unless they are void. This proposition has been repeatedly recognized by us. Bennett v. Ryan, 206 Iowa 1263, 222 N. W. 16; In re Estate of Holdorf, 227 Iowa 977, 289 N. W. 756; Myers v. Davis, 47 Iowa 325. On the other hand, if Judge Tankersley acted without jurisdiction, his orders would be void and subject to collateral attack herein. Irwin v. Keokuk Sav. Bk. & Tr. Co., 218 Iowa 477, 255 N. W. 671; Bookhart v. Younglove, 207 Iowa 800, 806, 218 N. W. 533, 536.

In determining whether or not Judge Tankersley had jurisdiction, it is necessary to consider certain rather fundamental principles in connection with the jurisdiction of the probate court. Section 11819 of the Code provides that the district court shall always be open for the transaction of probate business. Section 12581 provides that guardians for minors may employ counsel to prosecute or defend for their wards under proper orders of the court or a judge thereof. Section 12613 provides that the chapters of the Code relating to guardians for minors shall apply to guardians for persons of unsound mind. There can be no doubt but that Judge Tankersley, acting as the probate court, had the power to make the orders if he had jurisdiction of the subject matter and the parties. We think he did have jurisdiction and that the court erred in holding otherwise.

In the case of Shumaker v. Bohrofen, 217 Iowa 34, 36, 250 N. W. 683, 684, 92 A. L. R. 914, 915, we state:

"Concededly it is the general rule that the property of a ward in the hands of his guardian is in *custodia legis* and that it remains in such custody subject to the orders of the court charged with the responsibility therefor."

In In re Estate of Harsh, 207 Iowa 84, 87, 218 N. W. 537, 539, we state:

"Administration of estates of deceased persons is undertaken by the state through its courts, and pursuant to its statutes. The administrator is the officer of the law and of the court, and conducts the administration pursuant to the provisions of the

statutes, under the court's authority and supervision. In re Estate of Meinert, 204 Iowa 355. The exercise of the power granted by the cited section of the Code is a matter of administrative procedure, expressly committed to the discretion of the court. The court had jurisdiction and statutory authority to authorize the administrator to continue the business. If the order was too broad, it was not thereby void. The estate was in *custodia legis* in proceedings quasi *in rem,* and those interested, chargeable, as they were, with notice, should move for correction.''

In the case of Montgomery v. Gilbertson, 134 Iowa 291, 296, 111 N. W. 964, 966, 10 L. R. A., N. S., 986, 988, we state:

''The probate court had full power over the estate as soon as the will was probated, if not before, and the actions of the executors were subject to its approval and control until their final discharge. No matter what the provisions of the will, the estate was in court for settlement and distribution, and the executors gained their power and authority from the law, and not alone from the provisions of the will. Burlington Co. v. Gerlinger, 111 Iowa, 293; In re Van Vleck's Estate, 123 Iowa, 90. See, also, Shoenberger v. Institution, 28 Pa. 465.''

In the case of Thompson v. Thompson, 178 Iowa 1289, 1293, 160 N. W. 922, 923, we state:

''It must be recognized that a guardian who receives property for his ward receives it and holds it in trust for the ward, to be managed and controlled under the direction of the court making the appointment.''

It is the contention of the guardian and was the holding of the court below that the proceedings herein, which resulted in the orders of Judge Tankersley now challenged, were adversary proceedings, requiring notice to the guardian or the ward and a hearing. We do not think that the proceedings were adversary. The only case, which would seem to be at all analogous, is that of Brewer v. Stoddard, 49 Iowa 279, wherein it was asserted that an order, allowing a claim for support of the ward, was entered without jurisdiction because no notice was served on the ward. In holding otherwise, we state at page 281 of 49 Iowa:

''The court below, it is presumed, held the orders of the

Probate Court void, on the ground that the wards, plaintiffs in this case, were not served with notice of the proceedings, and made parties thereto. We cannot concur in this conclusion.

"The Circuit Court, acting as a court of probate, has jurisdiction of matters of guardianship. Code, §2312. A guardian is charged with the custody and management of the money and property of the ward, which may be appropriated to his support and education. The Probate Court has authority to direct and control the guardian in making expenditure for such purposes. In the case before us the court would have had authority to direct the guardian to pay the mother for the support of the wards, and after such support had been received by the wards a like order was proper. It was procured in this case upon the application of the mother.

"These proceedings are not adversary in their nature, nor do they partake of the character of an action. The guardian in discharge of his duty is directed as the court, in a proper case, would direct its officers. There is, therefore, no necessity for notice to the wards. The statute does not require it. Code, §§2566, 2567, 2568, cited by plaintiffs' counsel, are applicable to *actions*—adversary proceedings—against minors, and not to orders of the character of those under consideration.

"We think the uniform practice of the courts of this State, in probate matters of this character, accords with our conclusions."

The orders herein complained of authorized and directed the defendants herein to institute legal proceedings as attorneys for the guardian and fixed their compensation on a contingent basis of 50 percent of the amount recovered. These attorneys had previously been appointed to represent the guardian in making recovery of the proceeds of the stolen bonds. The plaintiff contended and the trial court held that the prior appointment had terminated. Judge Tankersley and the defendants, however, interpreted the former order as being still in force. There is no question about the jurisdiction of the court when the first order of appointment was made. While the matter is not free from doubt, we are of the opinion and hold that the order, authorizing the appointment of these attorneys to represent the guardian in the matter of recovering

the stolen bonds of this estate, was sufficiently broad to justify the interpretation which Judge Tankersley and the defendants placed upon it, namely, that these attorneys were still acting for the guardian in reference to the recovery of the assets of this estate. So considered, the orders now under attack were mere modifications of the former order, in that they specified certain bonds to be recovered and limited the fees of the attorneys to a contingent basis. The question then presented is whether or not such an order for attorney fees is an adversary proceedings in which notice should be given and a hearing had. We do not consider them to be adversary in their nature and the practice of the courts and lawyers in this state is in accord with our views. In the recent case of Glynn v. Cascade State Bank, 227 Iowa 932, 939, 289 N. W. 722, 725, in referring to the practice of allowance of attorney's fees in estate matters, we state as follows:

"In many, probably in most, estates where the court is required to fix the fees of the administrator and the attorney, there is no contest nor any objections, and the amounts allowed, as a practical matter, are determined without resort to anything more than the facts disclosed by the record of the proceedings in the estate. But in a case such as this, where both service and value are challenged by the objections, it seems necessary that a hearing be had and upon such hearing evidence be introduced."

The opinion in the above case constitutes a recognition by this court of a general practice in force for many years. We there recognized that the allowance of attorney fees in estate matters is not usually adversary and becomes such only when the allowance is subjected to a direct attack.

Here there has been no direct attack against the orders of Judge Tankersley. He was sitting as the probate court, which had jurisdiction of this estate. When so acting, the court had jurisdiction of the estate, the ward and the guardian. The attorneys were before him. The situation is analogous to that referred to in Brewer v. Stoddard, supra. Whether or not the allowance made was proper or erroneous and what our disposition in regard thereto might be in the event of a direct at-

tack against it, is wholly beside the point. For us to review the merits of the order, Haradon, as guardian, should have attacked it directly. The attack now made is a collateral attack. As above pointed out, our only question is whether or not the court had jurisdiction to make the orders. We hold that it did have jurisdiction. It was error for the trial court to hold otherwise.

II. By reason of our holding in division No. I of this opinion, it is not necessary for us to pass upon the contentions of the parties in reference to the claims of ratification and estoppel.

III. Plaintiff's appeal challenges that part of the decree which requires the guardian to indemnify his attorneys from any possible loss by reason of the indemnifying bonds given to Grundy county and to the city of Marshalltown. The contentions have some merit. The principal justification, if any there be, for a contingent fee of 50 percent, was the fact that defendants contemplated the necessity of filing indemnifying bonds and, in the event the bonds asserted to have been destroyed should be found in the hands of innocent purchasers, the defendants would be liable on their indemnifying bonds. The plaintiff, as guardian, was required to post a bond for the unpaid half of the judgment in the Grundy county case before he could collect it. Until he does so, he cannot collect it. It is unfortunate that the defendants have posted a bond for 50 percent of the judgment and the guardian has posted no bond at all. The liability of each should be 50 percent of the amount Grundy county might be entitled to recover in the event any of the bonds should reappear and be adjudged valid claims against the county. The decree appealed from placed a burden on the guardian of indemnifying defendants from any loss in such an event. The decree is too broad. It should divide the liability equally between the guardian and the defendants.

In reference to the bond given the city of Marshalltown, the guardian should indemnify defendants against any loss to the extent of 50 percent of the amount that the city might become entitled to assert as a liability on defendants' bond.

The decree appealed from is erroneous. It is reversed and

the cause is ordered remanded for the entry of a decree in harmony with this opinion.—Reversed.

STIGER, SAGER, BLISS, and HALE, JJ., concur.

RICHARDS, C. J., and HAMILTON, J., dissent.

RICHARDS, C. J. (dissenting)—The trial court found, and the record shows, that no relationship of attorney and client existed on April 4, 1936, between the defendants and plaintiff guardian. The written proposition filed by defendants on that date was in no manner different than one any other attorney might have made, in his own interests, to perform certain services under an agreement that he would be paid 50 percent of any recovery. On the same day the proposition was filed the court entered an order "that the above proposition of Boardman & Cartwright be accepted", and directing and empowering the guardian "to enter into a contract with Boardman & Cartwright under the above stated terms and conditions." Of the making of the proposition and of the entering of the order plaintiff was in complete ignorance until a later date when defendants presented to him for his signature a contract accepting the proposition of April 4th. Plaintiff refused to sign, and the record is clear that plaintiff never has employed defendants to represent him in any way in any of the matters to which defendants' proposal pertained. That was the status of the matter that still obtained on September 3, 1936, when defendants filed an application in which, following a recital of the making of the order of April 4th, the prayer was: "Wherefore, your applicants pray an order of this court authorizing them as attorneys for the guardian herein to institute such proceedings as they may deem advisable for the purpose of obtaining such reissuing of the bonds as set out in this application. Your applicants further pray that they may be authorized by the court to do all things, which, in their judgment, they deem necessary to obtain such a reissuing of such bonds and securities as set forth in this application, all upon the terms and conditions as heretofore ordered by this court." On the same day the court entered an order "that said Boardman & Cartwright, as attorneys for F. M. Haradon, guardian of M. E. Gillespie, of unsound mind, be authorized and

said attorneys are hereby authorized and directed to institute such proceedings as they deem best for the purpose of obtaining a reissuing and recovery'' of the bonds that will be mentioned later in this dissent. It was further provided in the order ''that said attorneys shall be entitled to a contingent fee of 50% of any recovery made by them.'' Of the making of this application and of the court's order thereon the guardian had no knowledge and was given no notice. On November 23, 1936, wholly without authority from the guardian, and relying solely on the order of September 3d, defendants filed a petition in equity against Grundy county, in which they named Frank M. Haradon, guardian of M. E. Gillespie, of unsound mind, as plaintiff. Therein judgment was prayed for $13,567.50 upon bonds issued by Grundy county that had been the property of the ward. On the same day the petition was filed the county entered appearance, the case was tried, and the decree signed by the court. In like manner an action was brought by defendants in the name of plaintiff guardian against the city of Marshalltown, in which a decree was entered that the city issue a duplicate of one $500 street improvement bond maturing May 1, 1941, and pay $1,146.28, the amount of two matured bridge bonds. The guardian was obligated in both decrees to file an indemnifying bond, as a condition of recovery. Plaintiff in no manner authorized the commencement of either case, and in no way participated. In fact he was in ignorance of the commencement and pendency of these actions defendants brought, until some time after the decrees had been entered.

There are statutes under which this guardian might have been removed had sufficient cause been shown. The district judge might then have made Boardman & Cartwright guardians, upon their filing bond. But despite these inhibitions on his powers the district judge attempted to clothe defendants with the authority to handle and litigate the ward's property rights in the bonds, an authority that was exclusively the guardian's, and in whatever manner the discretion of defendants might dictate, and all this was to be done in the name of the guardian who in truth was refusing to institute the litigation. In actuality defendants became guardians of the ward's interests in the bonds, under the terms of the September 3d

order. That the district judge so intended finds later confirmation. On December 5th he accepted the report of Boardman & Cartwright filed in the guardianship, detailing the manner in which they had handled the ward's rights in the bonds pursuant to the September 3d order. This report the judge promptly approved as a proper and authorized accounting for the ward's property, and in so doing the judge completely ignored the fact that Haradon, the guardian, and his bondsmen, were those on whom rested the rights and duty to account for the ward's interest in those bonds, and whose liability it would be in event of dereliction of that duty. Thus it seems clear that the court intended and interpreted the order of September 3d as having the substantial effect above ascribed to it. So viewed the making of the order was not within the powers of the district judge, and resultantly it was a nullity. Among the propositions of law given consideration by the writer in reaching this conclusion are the following.

As the majority observes, our statutes confer upon district judges a jurisdiction over the management of an incompetent's property. But what the majority seems to overlook is (1) that that jurisdiction is exercisable only through the medium of statutory guardianship proceedings, and (2) that the only manner of exercising that jurisdiction is by making orders or other judicial entries directing what things are to be done in the management of the ward's property *by a statutory guardian.* Except as it may be exercised through that medium and in that manner, probate jurisdiction has not been conferred upon district judges. An attempt to exercise a jurisdiction over a ward's property by means of directing anyone other than a statutory guardian to deal with the ward's property, is extrajudicial and void. We have so held in Long v. Burnett, 13 Iowa 28, 81 Am. Dec. 420; Shanks v. Seamonds & Campbell, 24 Iowa 131, 92 Am. Dec. 465; Irwin v. Keokuk Sav. Bk. & Tr. Co., 218 Iowa 477, 255 N. W. 671. In view of the facts noted, I would affirm the trial court's holding that the order of September 3d was void in its entirety.

I am authorized to state that HAMILTON, J., joins in this dissent.